

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS

JONATHAN J. GRIFFIN )
            Plaintiff )
          v. )
           )
US BANK NATIONAL ASSOCIATION, d/b/a AS ) Case No. 15-cv-06871
TRUSTEE FOR TBW MORTGAGE-BACKED TRUST ) Hon. Thomas Durkin
SERIES 2007-2, TBW MORTGAGE PASS THROUGH ) Magistrate Judge Daniel G. Martin
CERTIFICATES SERIES 2006-A35; OCWEN LOAN )
SERVICING, LLC; MORRIS LAING EVANS BROCK & )
KENNEDY, Chtd. )
          Defendants. )

### THIS IS A REDACTED COMPLAINT AND EXHIBITS WHICH ARE BEING FILED IN ACCORDANCE WITH THE ORDER OF THE COURT DATED SEPTEMBER 10, 2015

NOW COMES the Plaintiff, JONATHAN J. GRIFFIN, PRO SE., and complaining against

the Defendants, US BANK NATIONAL ASSOCIATION, d/b/a AS TRUSTEE FOR TBW

MORTGAGE-BACKED TRUST SERIES 2007-2, TBW MORTGAGE PASS THROUGH

CERTIFICATES SERIES 2006-A35, ("US Bank") OCWEN LOAN SERVICING, LLC,

("Ocwen") MORRIS LAING EVANS BROCK & KENNEDY, Chtd (MLEBK) and state as

follows:

### NATURE OF THE ACTION

1.      This is an action by a consumer seeking damages and costs against US Bank,

Ocwen and MLEBK for damages resulting from breach of contract and violations of the Fair Debt

Collections Practices Act, ("FDCPA") 15 U.S.C. §1692 et seq., the Illinois Consumer Fraud and

Deceptive Business Practices Act ("ICFA", 815 ILCS 505/2 et. seq. and the Real Estate

Settlement Procedures Act, ("RESPA").

### JURISDICTION AND VENUE

2.      Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §§1640, 1692

and 28 U.S.C. §§1331, 1337, as the action arises under the laws of the United States. The Court

supplemental jurisdiction over state law claims under 28 U.S.C. §1367.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conduct business in the Northern District of Illinois and all of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

## PARTIES

4.      Plaintiff JONATHAN J. GRIFFIN ("Griffin") is natural person residing in the Northern District of Illinois. Plaintiffs is a consumer as defined by FDCPA § 1692a (3).

5.      Defendant US BANK NATIONAL ASSOCIATION, d/b/a AS TRUSTEE FOR TBW MORTGAGE-BACKED TRUST SERIES 2007-2, TBW MORTGAGE PASS THROUGH CERTIFICATES SERIES 2006-A35 ("US Bank") has its principal place of business in Cincinnati, Ohio, with over a thousand offices across the United States, including several in Illinois and in this District. US Bank is an FDIC-insured financial institution, and it owns or purports to own home loans and investments secured by properties. US Bank does business under various names, including U.S. Bank National Association, as Trustee for TBW Mortgage-Backed Trust Series 2007-2, TBW Mortgage Pass-Through Certificates, Series 2007-2, and under such name, US Bank is the trustee to the Pooling and Servicing Agreement ("P&S Agreement") purportedly governing assets, securities, and/or ownership interests inclusive of Plaintiff's subject mortgage and on information and belief delinquent or defaulted loans.

6.      Defendant US Bank is a debt collector because when Plaintiff's loan was purportedly assigned to it on February 6, 2013, the loan was due for the November 1, 2012 payment. As such, Plaintiff's loan was in default at the time of the alleged assignment.

7.      Defendant, OCWEN LOAN SERVICING, LLC ("Ocwen") is a financial institution with its principal place of business located at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33146. Defendant transacts business in Illinois. Defendant's Illinois

registered agent is Illinois Corporation Service C, 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

8.     Ocwen is a loan servicing company that is in the business of purchasing and for servicing mortgage loans which are in default. According to Defendant's website, "Ocwen is the industry leader in servicing high-risk loans." See www.ocwen.com, "About Us: Our Company." http://www.ocwen.com/our-company (last visited August 5, 2015). Ocwen Financial is or is likely to be the current servicer for the P&S Agreement, which purportedly governs assets, securities, and/or ownership interests inclusive of Griffin's subject mortgage, and is or may be liable for any of the conduct and violations of law described herein that are attributable to US Bank.

9.     Defendant MORRIS LAING EVANS BROCK & KENNEDY, CHTD. ("MLEBK"), is a law firm organized as an Illinois professional corporation with offices at One East Wacker Drive, Suite 2500, Chicago, IL 60601. Its registered agent and office is Joon K. Park, One East Wacker Drive, Suite 2500, Chicago, IL 60601.

10.     MLEBK is engaged in the business of using the mails, internet and telephone to collect consumer debts originally owed to others. Most of the debts are residential mortgages.

11.     MLEBK is a debt collector as defined in the FDCPA.

12.     At relevant times, US Bank, Ocwen, MLEBK, perpetrated their conduct below individually and/or by and through their agents, exerted operational control concerning the facts at bar and with whom Defendants combined and conspired to commit the herein alleged misconduct, and such allegations and supporting facts alleged herein are pleaded in the alternative as applicable and as permitted by applicable law.

## BACKGROUND

**A.     The Making Home Affordable Program**

13.     The government passed the Emergency Economic Stabilization Act (Act), 12 U.S.C. §§ 5201 which provided a $700 billion bail out to the banks. The Act, in part, delegated authority to the U.S. Treasury to provide taxpayer money to banks, in return for the banks' agreement to participate in programs designed to assist struggling borrowers. 12 U.S.C § 5219. One such program was the Obama Administration's Making Home Affordable Modification Program. (HAMP).

14.     To participate in HAMP for Non-GSE Mortgages, the servicer must register and execute a Servicer Participation Agreement (SPA), related documents, and, if applicable, one or more Service Schedules with the Program Administrator on or before October 3, 2010. The SPA governs servicer participation in HAMP for all Non-GSE Mortgages. Exhibit A

15.     The entity that has the direct contractual obligation to the investor to perform the servicing functions is the entity that will formally elect to participate in MHA by signing the SPA.

16.     On September 9, 2010, Ronald Faris, President of Ocwen executed a SPA, thereby making Ocwen a participating servicer in HAMP. Upon information and belief, Ocwen received $1,835,624,254 for its share from the bailout. Exhibit B

17.     The SPA executed by Mr. Faris incorporates all "guidelines," "procedures," and "supplemental documentation, instructions, bulletins, frequently asked questions, letters, directives, or other communications" issued by the Treasury, Fannie Mae or Freddie Mac in connection with the duties of Participating Servicers. These documents together are known as the "Program Documentation" (SPA at ¶ 1.A.), and are incorporated by reference herein.

18.     The SPA mandates that a Participating Servicer "shall perform" the activities described in the Program Documentation "for all mortgage loans it services." (SPA at ¶¶1.A. 2.A) As part of the Program Documentation, the U.S. Treasury has released the Making Home Affordable Program Handbook ("Handbook") for Servicers of Non-GSE Loans, which is

- 4 -

periodically updated. The Handbook in effect at the time this action was instituted was Version 4.2, which became effective on May 1, 2013.

19.     Section 3 of the Handbook entitled "Protections against Unnecessary Foreclosure" provides that a Servicer like Ocwen cannot refer a loan to foreclosure unless and until one of the following exists: (a) The borrow is evaluated for HAMP and is determined to be ineligible; or (b) The borrower is offered at TPP, but fails to make current trial period payments; or (c) The Servicer has established Right Party Contact including two written requests requesting information from the borrower, and has otherwise met the Reasonable Effort solicitation standard, and the borrower has failed to respond; or (d) the Servicer has satisfied the Reasonable Effort solicitation standard without making Right Party contact; or (e) the borrower indicates that he or she is not interested in pursuing a HAMP modification; or (f) the Servicer has resolved the escalated case pursuant to Section 3.3 of Chapter 1 of the Handbook Guidelines. Exhibit C

20.     HAMP guidelines require each Servicer to solicit borrowers that are potentially eligible for HAMP by pre-screening all first lien mortgage loans that are behind by two or more payments so long as they meet the pre-screen criteria. The pre-screen criteria is the property in question is a less than a four (4) unit residential property, which is occupied by the borrower as their principal residence; the property is not vacant; the loan originated on or before January 1, 2009; the unpaid principal is less than $729,750; and the borrower has not been previously modified under HAMP. Exhibit D

21.     If a borrower meets the prescreen requirement, servicers must solicit them for HAMP. Chapter II, Section 2.2 of the applicable Handbook provides guidelines regarding the solicitation of borrowers.

22.     A Servicer must send two written notices to the borrowers last known address. One of the notices must be with a return receipt or delivery confirmation and the other must be via regular mail. Exhibit E

23.     Ocwen was required to send to Griffin written notification in regards to HAMP by regular mail and with return receipt/delivery confirmation as of January 1, 2014 at which time Griffin was more than 60 days late on his mortgage payments.

**B.      Consumer Financial Protection Bureau**

24.     In early 2012, examinations by the Multistate Mortgage Committee, which is comprised of state financial regulators, identified potential violations at Ocwen. In addition, the Federal Trade Commission referred its investigation of Ocwen to the **Consumer Financial Protection Bureau** ("CFPB") after the Bureau opened in July 2011. The Bureau then teamed with state attorneys general and state regulators to investigate and resolve the issues identified.

25.     The CFPB and its partner states believed that Ocwen was engaged in significant and systemic misconduct that occurred at every stage of the mortgage servicing process.

26.     Specifically, the complaint alleged that Ocwen:

- **Charged borrowers unauthorized fees** for default-related services;
- Provided false or misleading information in response to consumer complaints;
- **Failed to effectively assist, and in fact impeded, struggling homeowners trying to save their homes.**
- Failed to provide accurate information about loan modifications and other loss mitigation services;
- Failed to properly process borrowers' applications and calculate their eligibility for loan modifications;
- Provided false or misleading reasons for denying loan modifications;
- Engaged in illegal foreclosure practices; and

- Provided false or misleading information to consumers about the status of foreclosure proceedings where the borrower was in good faith actively pursuing a loss mitigation alternative also offered by Ocwen.

27.    The CFPB, together with Multistate Mortgage Committee obtained a Consent Judgment requiring the largest nonbank mortgage loan servicer in the country, Ocwen Financial Corporation, and its subsidiary, Ocwen Loan Servicing, to provide $2 billion in first lien principal reduction to underwater borrowers. The consent order can be found here.

https://nationalocwensettlement.com/

28.    The consent order addresses Ocwen's misconduct during the mortgage servicing process.

29.    Ocwen was also required pay $125 million to the nearly 185,000 Ocwen, Litton, and Homeward borrowers who have already been foreclosed upon and Ocwen must adhere to significant new homeowner protections.

30.    As a result of the consent order, Ocwen must change the way it services mortgages to ensure that borrowers are protected from the illegal behavior that puts them in danger of losing their homes. To ensure this, the CFPB and the states proposed that Ocwen follow the servicing standards set up by the 2012 National Mortgage Settlement with the five largest banks.

31.    In January 2013, the CFPB released new rules on mortgage servicing that applies to Ocwen. The standards that Ocwen must adhere to according to this court order are in addition to the protections offered to consumers under the new rules that take effect on Jan. 10, 2014.

**C.    National Mortgage Settlement**

32.    On February 9, 2012, the attorneys general of 49 states and the District of Columbia (every state but Oklahoma), the federal government and five banks and mortgage servicers (Bank of America, Citi, JPMorgan Chase, the ResCap Parties and Wells Fargo) reached

agreement on the National Mortgage Settlement (NMS) that created new servicing standards, provided for relief to distressed homeowners and provided funding for state and federal governments.

33.    The NMS was made formal and binding on April 5, 2012, when the United States District Court of the District of Columbia (Court) entered the consent judgments containing the Settlement terms.

34.    The five servicers were required to provide $20 billion in consumer relief and $5 billion in other payments.

35.    The NMS also established first-ever nationwide reforms to mortgage servicing. These standards require better communication with borrowers, a single point of contact, adequate staffing levels and training, and appropriate standards for executing documents in foreclosure cases.

## FACTUAL ALLEGATIONS

36.    Plaintiff Griffin is the sole owner of the single family residence commonly known as 9955 S. May Street, Chicago, IL 60430. ("the Property")

37.    According to Ocwen's records and an Assignment, US Bank is purportedly the owner of Griffin's loan, and Ocwen is the servicer. <u>Exhibit F</u>

38.    The property was originally owned by Griffin's mother, Sarah A. Reynolds who died on November 17, 2005.

39.    In her will, she left the property to Griffin.

40.    There was a reverse mortgage loan on the property, and Griffin was required to pay the loan off.

41.    On February 13, 2007, Griffin executed a 30-year mortgage loan ("subject loan") in the amount of $114,750.00 in favor of Taylor Bean & Whitaker Mortgage Corp.

42.     On or around October of 2012, Griffin was experiencing some hardship with making the payments as a result of his tenants paying late and fell behind on his payment beginning November 1, 2012.

43.     On or about February 6, 2013, Griffins mortgage was purportedly assigned to Us Bank. At the time of the assignment, Griffin's loan was in default.

44.     On March 3, 2013, Ocwen acquired the servicing rights for Griffin's loan. At the time of the transfer, Griffin's loan was in default.

45.     On August 27, 2013, US Bank filed a foreclosure against the property and Griffin in Cook County, Illinois with the case # 2013 CH 19691.

46.     At the time the time the complaint was filed, Ocwen was the loan servicer for Griffin's property.

47.     On December 20, 2013, Griffin filed an appearance and answer to the complaint.

48.     On August 26, 2014, Griffin's answer was stricken.

49.     On February 26, 2015, Griffin filed an amended answer and counterclaim.

50.     On March 6, 2015, Griffin applied for a loan modification from Ocwen by faxing a complete application to them. Exhibit G

51.     On April 24, 2015 Ocwen sent Griffin a proposed modification agreement ("the Agreement") for his review and consideration. Exhibit H

52.     The first paragraph of the Agreement stated: "Ocwen Loan Servicing, LLC ("Ocwen") is offering you this Loan Modification Agreement ("Agreement"), dated 4/24/2015, which modifies the terms of your home loan obligations as described in detail below":... The Agreement further stated: "Pursuant to our mutual agreement to modify your Note and Mortgage and in consideration of the promises, conditions, and terms set forth below, the parties agree as follows labeled as their respective paragraph:

1. "In order for the terms of this modification to become effective, you promise to make an initial payment of $883.82 on or before 6/1/2015 and one (1) equal monthly payments of principal and interest in the amount of $662.07 and any escrowed amount as outlined in section 3 below, to Ocwen ("Trial Period") beginning on 7/1/2015, and thereafter due on the same day of each succeeding month."

2. "You agree that, at the end of the Trial Period, the new principal balance due under your modified Note and Mortgage will be $139,598.43. Upon modification, your Note will become current and you will not be in default."

4. "If you successfully complete the Trial Period, your loan will automatically be modified pursuant to the terms of this Agreement (the "Modification"). However, if you fail to send any full payment on or before the respective due date during the Trial Period, the Trial Period will immediately terminate and the Modification offer will be null and void…"

53. Furthermore, the Modification contained certain stipulations were understood as detailed below in Paragraph 9(e) below:

9. "In the event that a foreclosure is pending, the foreclosure action will not be dismissed. However, Ocwen will take reasonable action to place it on hold pending your completion of the Trial Period. If the Trial Period is successfully completed, any foreclosure action will be dismissed."

54. On April 30, 2015, Griffin received a letter from MLEBK, which was signed by Justin F. Carter informing him Ocwen has indicated Griffin was eligible for a trial loan modification plan and the new monthly payment under the plan would be $883.82 beginning July 1, 2015, with the initial down payment due on June 1, 2015. The letter also stated that if Griffin was interested in the modification plan, Mr. Carter would draft a settlement agreement. Exhibit I

55. On May 13, 2015, Griffin signed the Loan Modification Agreement and sent it to Ocwen.

56. **REDACTED**                                    Exhibit J **filed Under Seal**

57.     **REDACTED**

58.     Griffin reviewed the Agreement and did not feel there was a compromise.

59. # REDACTED

60.     The requirement for dismissal of the action for a modification of the loan is unfair, deceptive and not required because Griffin was eligible for a modification. In fact the CFPB rules and Ocwen' consent order specifically prohibit this condition as stated below:

> "Ocwen shall not, in the ordinary course, require a borrower to waive or release legal claims and defenses as a condition of approval for a loan modification under these Consumer Relief Requirements. However, nothing herein shall preclude

Ocwen from requiring a waiver or release of legal claims and defenses with respect to a loan modification offered in connection with the resolution of a contested claim, when the borrower would not otherwise have qualified for that loan modification under existing Servicer programs." Exhibit K

61. REDACTED

62. REDACTED

63. REDACTED

64. REDACTED

65. REDACTED

66.     Griffin made the trial payment of $883.82 for the month of June which Ocwen accepted.

67.     On June 3, 2015, Griffin sent by registered and certified mail a Request for Information("RFI"), as further defined by Reg. X, 12 C.F.R. § 1024.36(a). Exhibit L

68.     The RFI requested information that sufficiently identified the Mortgage and properly specified information relating to the Mortgage as well as a breakdown of the numbers, fees, and costs that were used in approving him for a loan modification because he believed the numbers were wrong. Griffin also requested an explanation of how the escrows were calculated and the guidelines that were used in determining he was approved for a modification.

69.     On June 11, 2015, Griffin sent an e-mail to Katie McGlasson, an agent, employee of MLEBK asking if he had to sign the settlement agreement for his modification to be approved.

70.     On June 101 2015, Katie McGlasson, an employee of MLEBK replied to Griffin's and informed him as outlined in Mr. Carters letter sent on April 30, 2015, the settlement agreement must be signed in order for the modification to be accepted.

71.     On June 16, 2015, Griffin sent a follow up e-mail to Katie McGlasson to check status of the breakdown of the fees.

72.     On June 16, 2015 and June 18, 2015, Katie McGlasson replied to Griffin's email and informed him she was still waiting.

73.     On June 25, 2015, in response to Griffin's request for reinstatement figures, Katie McGlasson e-mailed Griffin the following figures:

| $107,682.65 | (Principal balance) |
| $22,124.54 | (Interest) |
| $243.66 | (Late Charges) |
| $230.00 | (Foreclosure fee) |
| $110.00 | (Projected Property Valuation Expense) |

| | | |
|---|---|---|
| $200.00 | (Additional/Hourly/Court Appearance | |
| $437.00 | (Filing Fee Complaint) | |
| $52.00 | (Lis Pendens/NOPA) | |
| $272.00 | (Service of Process) | |
| $26.12 | (Certified Mail Cost) | |
| $1,242.00 | (Civil Litigation) | |
| $1,265.00 | (FC Thru Service Complete) | |
| $562.18 | (Property Valuation Expense) | |
| $600.00 | (Title Report Fee) | |
| $394.50 | (Property Inspection Fee) | |
| + $5,924.41 | (Escrow Advance) | |
| **$141,366.06** | **Total Amount Due on or before July 1, 2015** Exhibit M | |

74. On July 31, 2015, an order was entered in which Griffin voluntary withdrew his counterclaim against U.S. Bank.

75. Prior to the hearing, Albert Schwartz III of MLEBK approached Griffin in the hallway at the Daley Center and explained that if Griffin did not withdraw his counterclaim with prejudice, the foreclosure was not going away.

76. At the hearing in oral argument, Mr. Schwartz falsely stated that the modification proposal was part of the overall settlement which it was not. Exhibit N

77. The case was continued to September 25, 2015 because US Bank had a Motion to Strike Griffin's Affirmative Defenses and Counterclaim, even though Griffin showed the Court that his modification paperwork said the foreclosure would be dismissed once the payments were made.

78. On August 3, 2015, Griffin made the payment of 883.82 as required in the Modification Agreement, which Ocwen accepted.

79. On August 4, 2015, Griffin received the countersigned modification which was signed and dated July 24, 2015. Exhibit O

### CAUSES OF ACTION

- 15 -

80. All of U.S. Bank, Ocwen, and MLEBK actions were the proximate cause of damages to Griffin that include illegal fees, charges, interest which forced Griffin into a perpetual state of "default," emotional distress, loss of time, medical bills, pain and suffering, and anxiety.

## COUNT I-FDCPA
## US BANK and OCWEN

81. Griffin re-states and incorporates paragraphs 1-80.

82. Griffin is a consumer as defined by the FDCPA § 1692a (3).

83. The subject debt and related unauthorized fees and costs qualify as a "debt" as defined by the FDCPA § 1692a (5) as they arise out of a transaction for personal, family, or household purposes.

84. US Bank and Ocwen are "debt collectors" as defined by the U.S.C. § 1692a (6) because it regularly uses the mails and/ or the telephone to collect, or attempt to collect, delinquent consumer accounts and because Griffin's loan was in default when it purportedly was assigned to Defendant and most or all of Ocwen's statements and correspondence sent to Griffin admitted that Ocwen was a debt collector attempting to collect a debt from Griffin.

85. US Bank and Ocwen violated the FDCPA, 15 U.S.C. §§ 1692d (5), section 1692e (2) (5) (10) (11), 1692 f (1) (5) (6). And 1692g through its debt collection efforts by misrepresenting the amount Griffin owed and adding unauthorized fees to the loan modification principal balance.

### a. Violation of § 1692d

86. U.S. Bank and Ocwen engaged in abusive and oppressive conduct through unethical mismanagement of Griffin's modification and foreclosure.

87. U.S. Bank and Ocwen engaged in abusive and oppressive conduct through its perpetual disregard for the loan modification.

### b. Violation of § 1692e & f

88. U.S. Bank and Ocwen took repeated actions to collect upon the subject debt while

the loan medication was in effect and while timely payments had been tendered.

89.     U.S. Bank and Ocwen misrepresented the collectable status to the subject debt in direct violation of 1692(e) (2).

90.     U.S. Bank and Ocwen continued the foreclosure case in direct violation of 1692(e) 5.

91.     U.S. Bank and Ocwen attempts to collect the subject debt by way of foreclosure and establishing a higher escrow account represent a false, deceptive, or misleading behavior in violation of § 1692e of the FDCPA.

92.     U.S. Bank and Ocwen used false or deceptive means to collect the debt by falsely misrepresenting representing the character amount on or about April 24, 2015 when it provided a Loan Modification Agreement with a principal debt obligation in the amount of $139,598.43 that included lumped attorney fees that had not been awarded, unauthorized fees and costs such as property inspection fees, property valuation expenses; and projected property valuation expenses that were bogus, not authorized by the mortgage and/or note, and or unreasonable as well as not necessary.

93.     U.S. Bank and Ocwen misrepresented the debt in violation of §§ 15 U.S.C. 1692e and 1692f by including the improper fees in its billing statements and reinstatement letters sent to Griffin in the last eleven months.

### c.     Violation of § 1692g (a)

94.     U.S. Bank and Ocwen included unauthorized fees and costs in the reinstatement and payoff statements sent to Griffin in violation of § 1692g (a).

95.     In all correspondence sent to Griffin, U.S. Bank and Ocwen misstated the amount of the debt under § 1692g (a) and misled Griffin as an unsophisticated consumer under § 1692e, which accounted to unfair and unconscionable means of collection under § 1692f.

96. The inclusion of the fees in Griffins modified loan balance violates 15 U.S.C. § 1692e (2), (1692e (4), 1692e (5), and 1692e (10).

97. Griffin has been damaged by such violations in that his loan and property has been encumbered by such fees.

WHEREFORE, Plaintiff JONATHAN J. GRIFFIN respectfully requests that this Honorable Court:

> (1) Statutory damages and actual damages in amount to be determined at trial;
>
> (2) Litigation expenses and costs of suit; and
>
> (3) Such other or further relief as the Court deems proper.

## COUNT II-FDCPA
## MORRIS LAING EVANS BROCK KENNEDY

98. Griffin re-states and incorporates paragraphs 1-97.

99. This claim is against MLEBK.

100. Griffin is a consumer as defined by the FDCPA § 1692a (3).

101. The term "debt collector" applies to a "lawyer who 'regularly' *through litigation*, tries to collect consumer debts. MLEBK is a debt collector because it regularly through litigation attempts to collect debts.

102. MLEBK violated the FDCPA which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices. MLEBK violated 15 U.S.C §§1692 e(2) by the following:

> a. By falsely misrepresenting representing the character, amount on or about June 24, 2015 when it provided a pay off in the amount of $141,366.06 due on or before July 1, 2015; and

> b. By the imposing and charging of unauthorized fees and costs such as property inspection fees, property valuation expenses; and projected property valuation expenses.

103. # REDACTED

104. # REDACTED

105. A violation of any section of the FDCPA is a strict liability.

106. As a result of MLEBK's actions and violations of the FDCPA, MLEBK is strictly liable to Griffin for damages, including but not limited to actual damages sustained, additional damages award, and cost of this action.

WHEREFORE, Plaintiff JONATHAN J. GRIFFIN respectfully requests that this Honorable Court:

> (1) Statutory damages and actual damages in amount to be determined at trial;
>
> (2) Litigation expenses and costs of suit, and
>
> (3) Such other or further relief as the Court deems proper.

## COUNT III – RESPA (Request for Information)
## OCWEN

107. Griffin re-states and incorporates paragraphs 1-106.

108. Griffin's Mortgage is a "federally related mortgage loan" within the meaning of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2602(1), in that it is secured by a first lien on residential real property designed for the occupancy of one to four families and the proceeds of it were used to purchase the secured property, and it was made by a lender whose deposits or accounts are insured by the FDIC and who is regulated by the Office of the Comptroller of the Currency.

109. RESPA, 12 U.S.C. § 2605, imposes various obligations on "servicers" of "federally related mortgage loans," enforceable by "borrowers," pursuant to 12 U.S.C. § 2605(f).

110. Defendant Ocwen is the "servicer" of this "federally related mortgage loan," within the meaning of 12 U.S.C. § 2605.

111. The "borrower" on the mortgage, within the meaning of 12 U.S.C. § 2605, is "Jonathan J. Griffin".

112. Among the legal duties imposed on servicers by 12 U.S.C. § 2605, as amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, 124 Stat. 1376 (July 21, 2010), is the obligation to respond to a "qualified written request" from a borrower either requesting the correction of an error in the

. handling of the account or requesting specific information related to the account. *See* 12 U.S.C. § 2605(e) and (k)(1)(C).

113. Pursuant to the authority granted by 12 U.S.C. § 2605(j) (3) and § 2605(k) (1) (E), the Consumer Financial Protection Bureau (CFPB) issued regulations, which went into effect January 14, 2014, defining two separate forms of borrower inquiries encompassed by 12 U.S.C § 2605(e)—a Notice of Error, *see* Regulation X, 12 C.F.R. § 1024.35, and a Request for Information, *see* Reg. X, 12 C.F.R. § 1024.36—and establishing separate procedural rules for the proper handling of each of these two form of inquiries.

114. On June 3, 2015, Griffin sent by registered and certified mail a Request for Information, as further defined by Reg. X, 12 C.F.R. § 1024.36(a) in that it requested information that sufficiently identified the Mortgage and properly specified information relating to the Mortgage.

115. Upon receipt of the Request for Information, Ocwen was obligated either to provide the requested information or conduct a "reasonable search" and notify the borrower that the requested information was not available. Reg. X, 12 C.F.R. § 1024.36(d).

116. Ocwen failed to provide information specified in the Request for Information that was available, including, but not limited to: breakdown of all the numbers, fees, and costs that were used in evaluating and approving Griffin for a loan modification, copies of the guidelines Ocwen used in approving Griffin for modification, and an explanation of how the escrows were calculated.

117. Upon information and belief, Ocwen failed to conduct the "reasonable search" for available information mandated by Reg. X, 12 C.F.R. § 1024.36(d) (1) (ii).

118. Ocwen also failed to provide a written response compliant with Reg. X, 12 C.F.R. § 1024.36(d)(1)(ii) by failing to notify Griffin whether the information he had requested was available or not available.

119. Ocwen's non-compliant response to Griffin's requests for information covered by 12 U.S.C. § 2605(e).

120. Upon information and belief, Ocwen's noncompliant investigation and failure to properly respond to Griffin's Request for Information was part of a deliberate practice of noncompliance, in that it occurred pursuant to a policy of Ocwen regarding how it would respond to requests for information under the new Dodd-Frank regime.

121. As a result of Ocwen's failure to comply with its above-described obligations Griffin suffered damages, including emotional distress and the cost of filing a suit to persist in these efforts to obtain critical information about Ocwen's handling of this account.

122. In addition to his actual damages, Griffin is entitled to statutory damages not in excess of $2000 for Ocwen's above-described pattern or practice of noncompliance, plus costs, pursuant to 11 U.S.C. § 2605(f).

WHEREFORE, Plaintiff JONATHAN J. GRIFFIN respectfully requests that this Honorable Court:

      (1) Statutory damages;

      (2) Litigation expenses and costs of suit; and

      (3) Such other or further relief as the Court deems proper.

## COUNT IV-CONSUMER FRAUD ACT (UNFAIRNESS)
## OCWEN

123. Griffin re-states and incorporates paragraphs 1-122.

124. Griffin meets the ICFA definition of "consumer." *See* 810 ILCS 505/1.

125. Ocwen violated 815 ILCS 505/2 by engaging in unfair acts and practices to collect a superseded debt.

126. It was unfair for Ocwen to ignore the SPA, National Ocwen Settlement, MHA guidelines and proceed with a foreclosure without viewing Griffin for loss mitigation options.

127. It was unfair for Ocwen to do the following:

    i.    File a foreclosure complaint without reviewing Griffin for all loss mitigation options;

    ii.    Failing to dismiss the foreclosure complaint after Griffin completed his trial payments;

    iii.    # REDACTED

    iv.    Charging and billing to Griffins account $562.18 in property valuations;

    v.    Charging and billing Griffin $394.50 in property inspection fees;

128. It was unfair for Ocwen to file a foreclosure complaint without reviewing Griffin for loss mitigation because when Ocwen received $1,835,624,254 in Trouble Asset Relief Project funds it promised to help borrowers like Griffin who is a tax payer.

129. It was unfair for Ocwen to charge Griffin inflated property inspection fees and property valuation fees when they were unreasonable, unnecessary, and excessive if they were done at all.

130. Ocwen's conduct is immoral, unscrupulous, unconscionable, and unethical in that, instead of taking steps that would allow Griffin an opportunity to try and keep his home, Ocwen prematurely instituted foreclosure proceedings. In so doing, Ocwen deprived Griffin from obtaining, among other things, a HAMP loan modification, a governmental program aimed at

preserving home ownership. By failing to comply, Ocwen also wrongfully sped up the foreclosure process as HAMP evaluation would have suspended foreclosure proceedings.

131.    Such conduct is especially unethical given that the simple act of performing any of these legal requirements could save Griffin from losing his homes, preserve his assets, and preserve neighborhoods from an excessive number of vacant homes. All of these are stated goals of the Illinois and federal laws aimed at easing the foreclosure crisis.

132.    Complying with these requirements is not an overly onerous or burdensome duty for Ocwen. However, the consequence of Ocwen's failure to do so was catastrophic for Griffin.

133.    The home was built by his mother in 1969 from the ground up. Griffin and his brothers and sister moved into this Property when he was in the seventh grade. When his mother passed, she left the property to Griffin.

134.    Griffin was in constant fear and worry of losing this home which has sentimental value to him and his family.

135.    Ocwen caused Griffin substantial damage in that, among other things: (a) Griffin was unfairly subjected to additional credit damage; (b) he was deprived of the suspension of foreclosure proceedings and his right to be evaluated for loan modifications, and thus denied the time and resources to allow him to fairly negotiate a plan to keep the home; and (c) excessive and unnecessary interest.

136.    Ocwen's conduct occurred in the course of trade or commerce.

137.    Ocwen engaged in unfair conduct by violating the public policy of Illinois and the federal guidelines enacted by Congress. Ocwen was aware Griffin was two months behind on his payment and failed to consider him for all loss mitigation programs prior to initiating the foreclosure.

138.    Ocwen received $1,835,624,254 in TARP funds to bail them out during the

financial crisis if it promised to help borrowers like Griffin, but chose instead to initiate a foreclosure and disregard its obligations to offer Griffin options that may have been available so he could try and save his home with a principal balance of $107,682.65 when he was 60 days delinquent.

139.    All of Ocwen's actions were the proximate cause of the damages to Griffinand he has injured because he has incurred legal costs and fees to defend a foreclosure action that could have been prevented had Plaintiff satisfied its contractual and legal duties. Additionally, Griffins principal balance is much higher than it would have been if he was evaluated and approved prior to the foreclosure complaint being filed so he has incurred excessive interest as well as the improper fees have been added to his loan balance.

140.    All of the above practices complained of occurred in the course of conduct involving trade or commerce.

141.    An award of punitive damages is appropriate because Ocwen's conduct was outrageous, willful, and wanton, and it showed a reckless disregard for the rights of Griffin over a three year period.

WHEREFORE, Plaintiff JONATHAN J. GRIFFIN respectfully requests that this Honorable Court:

(1) Statutory damages;

(2) Litigation expenses and costs of suit; and

(3) Punitive Damages

(4) Such other or further relief as the Court deems proper.

### COUNT V-CONSUMER FRAUD ACT (DECEPTION) US BANK and OCWEN

142.    Griffin restates paragraphs 1 through 141 above as though fully set forth herein.

- 25 -

143. Griffin meets the ICFA definition of "consumer." *See* 810 ILCS 505/1.

144. Ocwen violated 815 ILCS 505/2 by engaging in deceptive practices to collect the subject debt from Griffin.

145. It was deceptive for Ocwen and US Bank to;

    i.    **REDACTED**

    ii.    falsely claim each party would be liable for the own costs and attorney fees when the principal balance on his debt included attorney fees and costs;

    iii.    **REDACTED**

    iv.    falsely charge Griffin for property valuations when they were not done and/or the fee was inflated;

    v.    falsely claim that if he made an initial payment and then a subsequent payment his foreclosure case would be dismissed; and

    vi.    falsely claim he was eligible for HAMP, then deny him when he applied

146. U.S. Banks and Ocwen's overall scheme to trick Griffin to collect improper fees as well as misstate the amounts due on the loan was deceptive.

147. The deceptive practices occurred in the course and conduct involving trade or commerce.

148. U.S. Bank and Ocwen intended Griffin to rely on its deceptive practices to induce payments above and beyond what was actually owed. Griffin did in fact rely on U.S. Bank and Ocwen's deceptive practices which resulted in the following damages.

149. All of U.S. Banks and Ocwen's were the proximate cause of damages to Griffin that include illegal fees, charges, interest, loss of equity in his home, emotional distress, lack of sleep, medical bills, and pain and suffering.

150. This conduct is part of a pattern and practice of behavior by which U.S. Bank and Ocwen routinely engages as part of its business model. It is U.S. Bank and Ocwen's normal business practice to falsely misstate the nature of outstanding "debts" and amounts "owed" to consumers for its own pecuniary gain.

151.    An award of punitive damages is appropriate because Ocwen's conduct was outrageous, willful, and wanton, and it showed a reckless disregard for the rights of Griffin over a three year period. .

WHEREFORE, Plaintiff JONATHAN J. GRIFFIN requests that this Honorable Court:

(1) Enter judgment in his favor and against US Bank and Ocwen;

(2) Declare that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

(3) Award Griffin statutory, actual, and punitive damages, in an amount to be determined at trial, for the underlying ICFA violations;

(4). Award Griffin costs as provided under 815 ILCS 505/10a(c); and

(5). Award any other relief as this Honorable Court deems just and appropriate.

### COUNT VI-CONSUMER FRAUD ACT (DECEPTION)
### MORRIS LAING EVANS BROCK KENNEDY

Griffin restates paragraphs 1 through 151 above as though fully set forth herein.

152.    Griffin meets the ICFA definition of "consumer." *See* 810 ILCS 505/1.

153.    MLEBK violated 815 ILCS 505/2 by engaging in deceptive practices to collect the subject debt from Griffin

154.    It was deceptive for MLEBK to:

      i.     falsely claim that Griffin had dismiss his counterclaim with prejudice to get his loan modification;

     ii.     falsely claim each party would be liable for the own costs and attorney fees when the principal balance on his debt included attorney fees and costs;

   iii.     falsely tell the court that the modification was part of a settlement agreement; and

   iv.     falsely claim that the foreclosure case would not go away unless Griffin dismissed his counterclaim with prejudice.

155.     MLEBK's overall scheme – to try induce and trick Griffin to sign the settlement agreement was deceptive.

156.     MLEBK's communications to Griffin were purposely deceptive and designed to thwart Griffin's attempt to continue his counter-complaint against US Bank. MLEBK provided conflicting and materially false and inaccurate correspondence, falsely stated that the only way Griffin would get a loan modification is if he signed the settlement and release agreement,

157.     The deceptive practices occurred in the course of conduct involving trade or commerce.

158.     MLEBK intended that Griffin rely on its deceptive practices to induce him to sign the unfair settlement agreement. MLEBK's unfair practices resulted in the following specific damages.

159.     All of MLEBK's actions were the proximate cause of damages to Griffin that include illegal fees, emotional distress, pain and suffering, and the fear of losing the home his mother gave to him in her will.

160.     An award of punitive damages is appropriate because MLEBK's conduct was outrageous, willful, and wanton, and it showed a reckless disregard for the rights of Griffin as a consumer.

161.     Additionally, when Griffin objected to the signing of the settlement agreement from Katie, MLEBK attempted to scare Griffin by having the attorney, Justin Carter emailed Griffin demanding him to sign the settlement agreement if he wanted a modification.

WHEREFORE, Plaintiff JONATHAN J. GRIFFIN requests that this Honorable Court:

(1) Enter judgment in his favor and against US Bank and Ocwen;

(2) Declare that the practices complained of herein are unlawful and violate the

aforementioned statutes and regulations;

(3) Award Griffin statutory, actual, and punitive damages, in an amount to be determined at trial, for the underlying ICFA violations;

(4) Award Griffin costs as provided under 815 ILCS 505/10a(c); and

(5) Award any other relief as this Honorable Court deems just and appropriate

## COUNT VIII- BREACH OF CONTRACT
## US BANK and OCWEN

162.    Griffin restates paragraphs 1 through 161 above as though fully set forth herein.

163.    Under Illinois law, every contract implies a covenant of good faith and fair dealing.

164.    Griffin has a valid and enforceable mortgage contract with Defendants in the form of the loan modification.

165.    Griffin substantially performed his duties under the contract by tendering all monthly payments to Defendants, and its assignor, and by complying with all of the other terms of the contract.

166.    U.S. Bank and Ocwen are in material breach of the subject note, mortgage, and loan modification for its:

a.    charging of unauthorized fees and costs;

b.    failure to provide accurate repayment and reinstatement figures;

c.    failure to provide an accurate accounting; and

d.    failure to conduct its affairs in good faith.

167.    U.S. Bank and Ocwen further breached the express terms of the subject note, mortgage, and loan modification and its implied duty of good faith and fair dealing by:

a.    charging and collecting unauthorized costs and fees from Griffin

that were not permitted in ¶¶ 1 through 3 of the mortgage, the loan modification, or state or federal law;

                        b.      charging and collecting fees from Griffin that were not authorized by the mortgage contract.

168.    U.S. Bank and Ocwen's breach of the subject contract has caused Griffin damages that consist of illegal fees, charges, interest, damage to his credit report, loss of equity in his home, emotional distress, loss of consortium, and pain and suffering

WHEREFORE, Plaintiff JONATHAN J. GRIFFIN respectfully requests that this Honorable Court:

                    (1)      Find US Bank and Ocwen materially breached the mortgage contract;

                    (2)      award Griffin his actual damages to be proven at trial;

                    (3)      award Griffin his reasonable fees and costs; and

                    (4)      award Griffin other relief this Honorable Court deems equitable and just.

### COUNT IX- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### US BANK and OCWEN

169.    Griffin re-states and incorporates paragraphs 1-168.

170.    US Bank and Ocwen's conduct alleged herein, specifically the willful and knowing failure to review Griffin for loss mitigation prior to initiating foreclosure, the charging and imposing of unlawful and unauthorized fees, file a foreclosure, and then approve Defendant for a modification twenty months later after interest had accrued was extreme and outrageous behavior directed toward Griffin.

171.    US Bank and Ocwen's intended and/or recklessly disregarded not only their duties and legal obligations but also the probability that Defendants' conduct would cause Griffin to suffer severe emotional distress of losing the home his mother built and left to him

in her will if the home was lost to foreclosure when there were options available to him to save it.

172.    Additionally, Ocwen received $1,835,624,254 in TARP funds to bail them out during the financial crisis if it promised to help borrowers like Griffin, but chose instead to initiate a foreclosure and disregard its obligations to offer Griffin options that may have been available so he could try and save his home with a principal balance of $107,682.65 when he was 60 days delinquent.

173.    As a result of U.S. Bank and Ocwen's conduct, Griffin endured severe and extreme emotional distress that resulted in stress, anxiety and lack of sleep. Griffin sought help and treatment from various medical professionals.

174.    As a direct and proximate result of U.S. Banks and Ocwen's willful and wanton conduct Griffin suffered emotional distress, medical expenses, monetary losses and has been damaged in excess of $75,000.00.

WHEREFORE, Plaintiff JONATHAN J. GRIFFIN respectfully requests that this Honorable Court:

(1) Actual damages;

(2) Litigation expenses and costs of suit;

(3) Punitive Damages for U.S. Banks willful and wanton conduct; and

(4) Such other or further relief as the Court deems proper.

### COUNT X- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS MORRIS LAING EVANS BROCK KENNEDY

175.    Griffin re-states and incorporates paragraphs 1-174.

176.    MLEBK's conduct alleged herein, specifically the willful and knowing that Griffin was not required to dismiss his counter-complaint in order to get a final modification

as well as drafting an unilateral, unconscionable and unfair settlement and release agreement was extreme and outrageous behavior directed toward Griffin.

177.    MLEBK intended and/or recklessly disregarded not only their duties and legal obligations but also the probability that MLEBK's conduct would cause Griffin to suffer severe emotional distress of losing the home his mother built and left to him in her will if the home was lost to foreclosure when there were options available to him to save it.

178.    As a result of MLEBK's conduct, Griffin endured severe and extreme emotional distress that resulted in stress, anxiety and lack of sleep. Griffin sought help and treatment from various medical professionals.

179.    As a direct and proximate result of MLEBK's willful and wanton conduct Griffin suffered emotional distress, medical expenses, monetary losses and has been damaged in excess of $75,000.00.

WHEREFORE, Plaintiff JONATHAN J. GRIFFIN respectfully requests that this Honorable Court:

(1) Actual damages;

(2) Litigation expenses and costs of suit;

(3) Punitive Damages for MLEBK's willful and wanton conduct; and

(4) Such other or further relief as the Court deems proper

**JURY DEMAND**
Plaintiff demands trial by jury.

Respectfully Submitted,
By: ___s:/Jonathan J. Griffin____
**Jonathan J. Griffin**
Plaintiff

Jonathan Griffin
P.O. Box 921
Homewood, IL 60430
Tel. (708) 351-2620
PRO SE# 99500

# Exhibit H



OCWEN

Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

4/24/2015

Jonathan J Griffin
17735 Gladville Ave
Homewood, IL 60430

Loan Number: ███████████
Property Address: 9955 S May St, Chicago, IL 60643

### PROPOSED MODIFICATION AGREEMENT

Dear Borrower(s):

Enclosed please find a proposed modification agreement (the "Agreement") on your loan referenced above for your review and consideration.

In order to accept this modification on your loan, you must complete ALL of the following steps **on or before 6/1/2015, ("Due Date")**:

1. **SIGN** the bottom of the Agreement on the line(s) for the Borrower(s):

2. **FAX** the fully executed Agreement to:
   Attention: Home Retention Department
   (407) 737-5693

3. **PAY** the full initial payment in the amount of:
   $ 883.82
   *[See Payment Instructions Attached]*

4. **NEW MONTHLY PAYMENT:**
   Principal and Interest Payment:       $ 662.07
   Escrow Payment:                        $ 221.75
   Total                                  $ 883.82
   Starting on 7/1/2015.

5. **SEND** proof of insurance coverage*
   (Send proof of insurance ONLY to Escrow
   Dept. DO NOT include the Agreement.)
   Attention: Escrow Department
   Fax: (888) 882-1816
   E-mail:updateinsuranceinfo@ocwen.com

   *\* Proof of insurance and the Agreement must be sent separately to the correct departments using the fax numbers provided above.*

If your loan is not currently escrowed, you must provide Ocwen Proof of Insurance (Declaration Page) on or before 6/1/2015. If no proof of insurance is received by 6/1/2015, an insurance policy will be lender-placed with the monthly cost included in your mortgage payment. The cost of lender-placed insurance may be more expensive than insurance you may obtain for yourself.

Time is of the essence on this offer. If ALL of the items above are not completed by the Due Date, the Agreement shall have no force or effect and any down payment received will be returned to you. Please be advised that Ocwen Loan Servicing, LLC will not delay, postpone or otherwise stop any collection efforts until ALL of the steps above have been completed.

*STUPBSTIP220140917*

███████████ This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

320537
NMLS # 1852

Exhibit 5



Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

OCWEN

If you have any questions or require additional information, please contact the Customer Care Center directly at (800) 746-2936. We are available Monday through Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm and Sunday 9:00 am to 9:00 pm ET.

Sincerely,

Ocwen Loan Servicing, LLC

### PAYMENT REMITTANCE INFORMATION

1. Make checks payable to Ocwen Loan Servicing, LLC.
2. Always <u>include your loan number</u> with your payment.

### OVERNIGHT DELIVERY
### (Personal Check, Money Order or Certified Checks)

OCWEN LOAN SERVICING, LLC
ATTN: CASHIERING DEPARTMENT
1661 Worthington Road, Suite 100
West Palm Beach, Florida 33409

**MONEY GRAM**
RECEIVER CODE: 2355
PAYABLE TO: OCWEN LOAN SERVICING, LLC
CITY: ORLANDO
STATE: FLORIDA
REFERENCE:LOAN # ▮▮▮▮▮▮▮
AGENT LOCATER: (800) 926-9400

**BY WUQC**
Code City: Ocwen
State: FL
Reference: Loan # ▮▮▮▮▮▮▮
Attn: Home Retention Department

**BANK WIRE**
BANK: Wells Fargo Bank, NA
ABA: ▮▮▮▮▮▮▮
ACCOUNT NAME: Ocwen Loan Servicing, LLC In Trust for Various Investors and Mortgagors
ACCOUNT NUMBER: ▮▮▮▮▮▮▮
REFERENCE: Loan Number, Property Address, and Borrower Name.
Email: Transferfunds@ocwen.com with the details of the wire.

*STUPBSTIP220140917*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

320537
NMLS # 1852



Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

O C W E N

# LOAN MODIFICATION AGREEMENT

Ocwen Loan Servicing, LLC ("Ocwen") is offering you this Loan Modification Agreement ("Agreement"), dated 4/24/2015, which modifies the terms of your home loan obligations as described in detail below:

A.    the Mortgage, Deed of Trust, or Security Deed (the "Mortgage"), dated and recorded in the public records of Cook County, and

B.    the Note, of the same date and secured by the Mortgage, which covers the real and personal property described in the Mortgage and defined therein as the "Property", located at 9955 S May St, Chicago, IL 60643.

Pursuant to our mutual agreement to modify your Note and Mortgage and in consideration of the promises, conditions, and terms set forth below, the parties agree as follows:

1.    In order for the terms of this modification to become effective, you promise to make an initial payment of $ 883.82 on or before 6/1/2015 and one (1) monthly payments of principal and interest in the amount of $ 662.07, and any escrowed amount as outlined in section 3 below, to Ocwen ("Trial Period") beginning on 7/1/2015, and thereafter due on the same day of each succeeding month.

2.    You agree that, at the end of the Trial Period, the new principal balance due under your modified Note and the Mortgage will be $139,598.43. Upon modification, your Note will become current and will not be in default.

3.    You will be required to pay to Ocwen, until such time the loan is paid in full, a sum to provide for payment of amounts due for (i) yearly taxes and assessments which may attain priority over the Security Instrument as a lien on the Property, and (ii) yearly hazard or property insurance premiums, all in accordance with the terms and conditions of the Security Instrument. A waiver of this requirement by Ocwen as of the Effective Date shall not constitute a waiver of such requirement at any future date, and Ocwen specifically reserves the right, in its sole and absolute discretion, to impose such requirement at any time upon written notice to you.

4.    If you successfully complete the Trial Period, your loan will automatically be modified pursuant to the terms of this Agreement (the "Modification"). However, if you fail to send any full payment on or before the respective due date during the Trial Period, the Trial Period will immediately terminate and the Modification offer will be null and void. Acceptance and application of late payments during the Trial Period does not waive Ocwen's right to terminate the Trial Period, nullify the Modification, or resume foreclosure or other activities related to the delinquency of the loan under its original terms.

5.    After the Trial Period expiration, you promise to make payments of principal and interest, and, if applicable, any escrowed amount as outlined in section 3, on the same day of each succeeding month until all amounts owed under the Note and Modification are paid in full. The maturity date of your Mortgage will be 3/1/2037.

6.    Upon Modification, the interest rate of 2.00000% will begin to accrue on the unpaid principal balance as of 7/1/2015 and the first new monthly payment on the unpaid principal balance will be due on 8/1/2015. Your payment schedule for the modified Loan is as follows

*STUPBSTIP220140917*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

320537
NMLS # 1852



Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do! ™*

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5.0 | 2.00000% | 7/1/2015 | $662.07 | $221.75, adjusts annually after year 1 | $883.82, adjusts annually after year 1 | 8/1/2015 | 60 |
| 5.0 - Loan Maturity | 3.67000% | 7/1/2020 | $752.97 | adjusts annually | Adjusts Annually | 8/1/2020 | 200 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

7. If you sell your property, refinance, or otherwise payoff your loan during the 12 months following the date of Modification, the Modification will be voidable at the sole option of Ocwen and all amounts owed under the obligations existing prior to the Modification will be due and owing.

8. You will comply with all other covenants, agreements, and requirements of your Mortgage, including without limitation, the covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that you are obligated to make under the Mortgage, except as otherwise provided herein.

9. You understand and agree that:
    (a) All the rights and remedies, stipulations, and conditions contained in your Mortgage relating to default in the making of payments under the Mortgage will also apply to default in the making of the modified payments hereunder.

    (b) All covenants, agreements, stipulations, and conditions in your Note and Mortgage will remain in full force and effect, except as herein modified, and none of the your obligations or liabilities under your Note and Mortgage will be diminished or released by any provisions hereof, nor will this Agreement in any way impair, diminish, or affect any of Ocwen's rights under or remedies on your Note and Mortgage, whether such rights or remedies arise there under or by operation of law. Also, all rights of recourse to which Ocwen is presently entitled against any property or any other persons in any way obligated for, or liable on, your Note and Mortgage are expressly reserved by Ocwen.

    (c) Any expenses incurred in connection with the servicing of your loan, but not yet charged to your account as of the date of this Agreement, may be charged to your account after the date of this Agreement.

    (d) Nothing in this Agreement will be understood or construed to be a satisfaction or release in whole or in part of your Note and Mortgage.

    (e) In the event that a foreclosure is pending, the foreclosure action will not be dismissed. However, Ocwen will take reasonable action to place it on hold pending your completion of the Trial Period. If the Trial Period is successfully completed, any pending foreclosure action will be dismissed.

    (f) During the Trial period, your loan will continue to be delinquent. As a result, late fees may be charged and credit reporting will continue pursuant to the original terms of your Note.

*STUPBSTIP220140917*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

320537
NMLS # 1852



Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do! ™*

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

(g)   You agree to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Ocwen, will bind and inure to your heirs, executors, administrators, and assigns.

(h)   You understand that this agreement is legally binding and that it affects your rights. You confirm that you have had the opportunity to obtain, independent legal counsel concerning this Agreement and are signing this Agreement voluntarily and with full understanding of its contents and meaning.

(i)    Corrections and Omissions: You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and security interests intended to secure the payment of the loan evidenced by the Note.

_____          *Jonathan J Griffin*    5|13|2015
Ocwen Loan Servicing, LLC                Jonathan J Griffin


By:   _____          _____
         Authorized Officer

*STUPBSTIP220140917*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

320537
NMLS # 1852

# Exhibit L

**Request for Information Pursuant to Regulation X §1024.36**

June 3, 2015

Ocwen Loan Servicing, LLC
Research Department
PO Box 24736
West Palm Beach, FL 33416-4736

Jonathan Griffin,
P.O. Box 921,
Homewood, IL 60430

RE: Information Request

Mortgage Loan Number: ██████0827

I am writing to request the information described below in regard to the mortgage on the property located at 9955 S. May Street, Chicago, IL 60643

I need a breakdown of all the numbers, fees, and costs that were used in evaluating and approving me for a loan modification as well as an explanation how the escrows were calculated. I disagree with the amount you allege I owe and feel that you miscalculated the numbers when determining my payment. In order for me to fully determine this, I am requesting the above information. In addition, I request the guidelines you used in determining that I was eligible for HAMP (modification) as well as a copy of the Net Present Value results. I also am requesting the owner of my loan.

If you need to contact me to discuss this request, I can be reached at jg4467@comcast.net or by mail at Jonathan Griffin, P.O. Box 921, Homewood, IL 60430.

Sincerely,

_Jonathan Griffin_
Jonathan Griffin

Certified Mail
7014-2870-0001-6406-3344

# Exhibit O



Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
Helping Homeowners is What We Do! ™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

# LOAN MODIFICATION AGREEMENT

Ocwen Loan Servicing, LLC ("Ocwen") is offering you this Loan Modification Agreement ("Agreement"), dated 4/24/2013, which modifies the terms of your home loan obligations as described in detail below:

A.   the Mortgage, Deed of Trust, or Security Deed (the "Mortgage"), dated and recorded in the public records of Cook County, and

B.   the Note, of the same date and secured by the Mortgage, which covers the real and personal property described in the Mortgage and defined therein as the "Property", located at 9355 S May St, Chicago, IL 60643.

Pursuant to our mutual agreement to modify your Note and Mortgage and in consideration of the promises, conditions, and terms set forth below, the parties agree as follows:

1.   In order for the terms of this modification to become effective, you promise to make an initial payment of   $ 883.82 on or before 6/1/2015 and one (1) equal monthly payments of principal and interest in the amount of   $ 562.07, and any escrowed amount as outlined in section 3 below, to Ocwen ("Trial Period") beginning on 7/1/2015, and thereafter due on the same day of each succeeding month.

2.   You agree that, at the end of the Trial Period, the new principal balance due under your modified Note and the Mortgage will be $139,598.43. Upon modification, your Note will become current and will not be in default.

3.   You will be required to pay to Ocwen, until such time the loan is paid in full, a sum to provide for payment of amounts due for (i) yearly taxes and assessments which may attain priority over the Security Instrument as a lien on the Property, and (ii) yearly hazard or property insurance premiums, all in accordance with the terms and conditions of the Security Instrument. A waiver of this requirement by Ocwen as of the Effective Date shall not constitute a waiver of such requirement at any future date, and Ocwen specifically reserves the right, in its sole and absolute discretion, to impose such requirement at any time upon written notice to you.

4.   If you successfully complete the Trial Period, your loan will automatically be modified pursuant to the terms of this Agreement (the "Modification"). However, if you fail to send any full payment on or before the respective due date during the Trial Period, the Trial Period will immediately terminate and the Modification offer will be null and void. Acceptance and application of late payments during the Trial Period does not waive Ocwen's right to terminate the Trial Period, nullify the Modification, or resume foreclosure or other activities related to the delinquency of the loan under its original terms.

5.   After the Trial Period expiration, you promise to make payments of principal and interest, and, if applicable, any escrowed amount as outlined in section 3, on the same day of each succeeding month until all amounts owed under the Note and Modification are paid in full. The maturity date of your Mortgage will be 3/1/2037.

6.   Upon Modification, the interest rate of 2.00000% will begin to accrue on the unpaid principal balance as of 7/1/2015 and the first new monthly payment on the unpaid principal balance will be due on 8/1/2015. Your payment schedule for the modified Loan is as follows

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

STUPBSTTP220140917

320537
NMLS #1852



Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
Helping Homeowners is What We Do! ™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|----------------------------------------------|------------------------------------------|----------------------|-------------------|----------------------------|
| 1-5.0 | 2.00000% | 7/1/2015 | $662.07 | $221.75, adjusts annually after year 1 | $883.82, adjusts annually after year 1 | 8/1/2015 | 60 |
| 5.0 - Loan Maturity | 3.67000% | 7/1/2020 | $752.97 | adjusts annually | Adjusts Annually | 8/1/2020 | 200 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

7. If you sell your property, refinance, or otherwise payoff your loan during the 12 months following the date of Modification, the Modification will be voidable at the sole option of Ocwen and all amounts owed under the obligations existing prior to the Modification will be due and owing.

8. You will comply with all other covenants, agreements, and requirements of your Mortgage, including without limitation, the covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that you are obligated to make under the Mortgage, except as otherwise provided herein.

9. You understand and agree that:

   (a) All the rights and remedies, stipulations, and conditions contained in your Mortgage relating to default in the making of payments under the Mortgage will also apply to default in the making of the modified payments hereunder.

   (b) All covenants, agreements, stipulations, and conditions in your Note and Mortgage will remain in full force and effect, except as herein modified, and none of the your obligations or liabilities under your Note and Mortgage will be diminished or released by any provisions hereof, nor will this Agreement in any way impair, diminish, or affect any of Ocwen's rights under or remedies on your Note and Mortgage, whether such rights or remedies arise there under or by operation of law. Also, all rights of recourse to which Ocwen is presently entitled against any property or any other persons in any way obligated for, or liable on, your Note and Mortgage are expressly reserved by Ocwen.

   (c) Any expenses incurred in connection with the servicing of your loan, but not yet charged to your account as of the date of this Agreement, may be charged to your account after the date of this Agreement.

   (d) Nothing in this Agreement will be understood or construed to be a satisfaction or release in whole or in part of your Note and Mortgage.

   (e) In the event that a foreclosure is pending, the foreclosure action will not be dismissed. However, Ocwen will take reasonable action to place it on hold pending your completion of the Trial Period. If the Trial Period is successfully completed, any pending foreclosure action will be dismissed.

   (f) During the Trial period, your loan will continue to be delinquent. As a result, late fees may be charged and credit reporting will continue pursuant to the original terms of your Note.

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

STL/PBST/P220140917

320637
LNMS2Z1852



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Ste 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2536

(g)  You agree to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Ocwen, will bind and inure to your heirs, executors, administrators, and assigns.

(h)  You understand that this agreement is legally binding and that it affects your rights. You confirm that you have had the opportunity to obtain, independent legal counsel concerning this Agreement and are signing this Agreement voluntarily and with full understanding of its contents and meaning.

(i)  Corrections and Omissions: You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and security interests intended to secure the payment of the loan evidenced by the Note.

Ocwen Loan Servicing, LLC

Jonathan J Griffin        5|13|2015

**Bendiane Zephir**

By: _____

Authorized Officer

**JUL 2 4 2015**

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

STUPBSTIP220740917

322337
NMLS # 1852


## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

JONATHAN J. GRIFFIN )
         Plaintiff )
        v. )
 )
US BANK NATIONAL ASSOCIATION, d/b/a AS ) Case No. 15-cv-06871
TRUSTEE FOR TBW MORTGAGE-BACKED TRUST ) Hon. Hon. Jorge L. Alonso
SERIES 2007-2, TBW MORTGAGE PASS THROUGH ) Magistrate Judge Daniel G. Martin
CERTIFICATES SERIES 2006-A35; OCWEN LOAN )
SERVICING, LLC; MORRIS LAING EVANS BROCK & )
KENNEDY, Chtd. )
        Defendants. )

## NOTICE OF FILING PLAINTIFF'S REDACTED COMPLAINT AND EXHIBITS H, L, AND O PURSUANT IN COMPLIANCE WITH THE SEPTEMBER 10, 2015 ORDER

To:    Amy E. Breihan              Laura Elizabeth Fahey
       Jena Valdetero             Nicole D. Milos
       Robert Brunner             Cremer, Spina, Shaughnessy, Jansen & Siegert, LLC
       BRYAN CAVE LLP        One North Franklin Street 10th Floor
       161 N. Clark Street, Suite 4300    Chicago, Illinois 60606
       Chicago, IL 60601-3315

       Please take notice that on September 15, 2015, Plaintiff filed a Redacted Complaint and Exhibits with the Clerk of the United States District Court for the Northern District Illinois at Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, Illinois, a copy of which is hereby served upon you.

Dated: September 14, 2015

                                 Respectfully Submitted,

                                 By: ____s:/Jonathan J. Griffin____
                                 **Jonathan J. Griffin**
                                 Plaintiff

Jonathan Griffin
P.O. Box 921
Homewood, IL 60430
Tel. (708) 351-2620

- 1 -

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on September 15, 2015 a true and correct copy of

the foregoing document was served via the Court's electronic filing system upon the following

parties and counsel of record:

| | |
|---|---|
| Amy E. Breihan | Laura Elizabeth Fahey |
| Jena Valdetero | Nicole D. Milos |
| Robert Brunner | Cremer, Spina, Shaughnessy, Jansen & Siegert, LLC |
| BRYAN CAVE LLP | One North Franklin Street 10th Floor |
| 161 N. Clark Street, Suite 4300 | Chicago, Illinois 60606 |
| Chicago, IL 60601-3315 | *Counsel for Morris Laing Evans Brock & Kennedy* |
| *Counsel for U.S. Bank and Ocwen* | |

Respectfully Submitted,

By: ___s./Jonathan J. Griffin____
**Jonathan J. Griffin**