# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JONATHAN J. GRIFFIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15 CV 6871 |
| v. ) | |
| ) | |
| U.S. BANK NATIONAL ASSOCIATION, ) | Judge Jorge L. Alonso |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Defendants Ocwen Loan Servicing, LLC ("Ocwen") and U.S. Bank, National Association, as Trustee for TBW Mortgage-Backed Trust Series 2007-2, TBW Mortgage Pass Through Certificates Series 2006-A35 ("U.S. Bank") have filed a partial motion to dismiss plaintiff's first amended complaint. For the reasons set forth below, the motion [113] is granted in part and denied in part.

## BACKGROUND

In July 2007, plaintiff Jonathan Griffin executed a 30-year Mortgage Loan and Note for $114,750.00 with Taylor Bean & Whitaker Mortgage Corp for certain property[1] located in Chicago, Illinois. (Am. Compl. ¶ 31, Exhibit A, ECF No. 99.) Beginning in November 2012, plaintiff fell behind on his mortgage payments because his tenants were late in their payments. (Am. Compl. ¶ 32.)

On March 3, 2013, defendant Ocwen Loan Servicing ("Ocwen") acquired the servicing rights for plaintiff's loan. (*Id.* ¶ 33.) On August 27, 2013, U.S. Bank filed a foreclosure action against the property and plaintiff. (*Id.* ¶ 34.) On March 6, 2015, plaintiff applied for a Loan

---

[1] The property was not plaintiff's homestead property. (Am. Compl., Exhibit B, ECF No. 99-2.)

Modification from Ocwen. (*Id.* ¶ 35.) On April 24, 2015, Ocwen sent plaintiff a proposed Loan Modification Agreement, which laid out certain terms. (*Id.* ¶ 36, Exhibit C.) On May 13, 2015, plaintiff signed the Loan Modification Agreement and sent it to Ocwen. (*Id.* ¶ 40.) Plaintiff made payments for the months of June and August 2015 under the Loan Modification Agreement. (*Id.* ¶¶ 50, 59.) On August 4, 2015, plaintiff received the countersigned Loan Modification Agreement from Ocwen, which Ocwen had signed and dated on July 24, 2015. (*Id.* ¶¶ 40, 60.)

**STANDARD**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a pleading that purports to state a claim for relief must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of a motion to dismiss, the Court accepts "as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017). When ruling on a Rule 12(b)(6) motion, the court considers "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 604 (7th Cir. 2013) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745-46 n. 1 (7th Cir. 2012)).

# DISCUSSION

**Count III - Breach of Contract**

In plaintiff's initial complaint, he generally alleged that defendants breached the Loan Modification Agreement by collecting unauthorized fees and costs. Defendants moved to dismiss the breach of contract claim, arguing that plaintiff had failed to state a plausible claim for relief. In its prior order, the Court found that plaintiff insufficiently pled a breach of contract claim, dismissed the claim, and gave plaintiff an opportunity to amend his complaint. (*See* ECF No. 85.) Plaintiff filed an amended complaint, in which he specified that defendants breached the Note and Mortgage "by charging and colleting property inspection fees, and BPO that were not permitted by the mortgage and note." (Am. Compl. ¶ 97, ECF No. 99.)

Defendants again move to dismiss, arguing that plaintiff has failed to plausibly allege a breach of contract claim because he did not include specific facts indicating exactly how defendants breached the contract. Plaintiff responds that the key difference between the initial complaint and the amended complaint is plaintiff's allegation that defendants breached the Note and Mortgage by improperly charging and collecting property inspection fees. Plaintiff also includes in the amended complaint the actual dollar amount charged by defendants for the inspection fees and alleges that the fees were improper because the inspections were never conducted. Because plaintiff's allegations are accepted as true in a motion to dismiss, plaintiff's allegation that the fees were for charges never incurred is sufficient to state a claim for breach of contract. *Chatman v. Fairbanks Capital Corp.*, No. 02 C 665, 2002 WL 1338492, at *4 (N.D. Ill. June 18, 2002) (denying defendant's motion to dismiss for failure to state a claim for a breach of contract claim alleging defendant improperly collected property preservation fees). Furthermore,

whether defendants actually incurred the property inspection fees is a factual issue that is more appropriate for summary judgment. *Id.*

Defendants next argue that plaintiff is unable to state a claim because he previously defaulted on his loan and therefore materially breached the contract. To support this argument, defendants cite *Fireman's Fund Mortg. Corp. v. Zollicoffer*, 719 F. Supp. 650 (N.D. Ill. 1989), where the court found that the plaintiffs, who made the first two payments under their Note and Mortgage and were 33 payments in arrears, materially breached their Note and Mortgage. 719 F. Supp. 655-656. After the plaintiffs missed several payments, the defendants accelerated the loan, took action to secure the premises, and filed a complaint to foreclose on the loan. *Id*. at 655. The court found that the plaintiffs' material breach of the loan precluded the plaintiffs from seeking recovery for any subsequent breach by the lender and, therefore, granted summary judgment in favor of defendants. *Id*. at 657. The facts and procedural posture of *Zollicofer* are distinguishable from this case. Here, the limited facts before the Court show that plaintiff missed two payments on his Note and Mortgage, U.S. Bank filed a foreclosure action, plaintiff applied for a Loan Modification Agreement, and plaintiff later entered into a Loan Modification Agreement with Ocwen. It is too early at this stage to determine whether plaintiff's missed payments constitute a material breach under the Note and Mortgage that completely precludes him from alleging a breach of contract claim. Furthermore, the Seventh Circuit has rejected an argument similar to the one brought by defendants—that any failure by a borrower to perform under the contract precludes a borrower from bringing a breach of contract claim against a lender. *See Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 692 (7th Cir. 2011). Accordingly, the Court finds that plaintiff has plausibly alleged a breach of contract claim, and defendant's motion to dismiss plaintiff's breach of contract claim is denied.

**Count IV - Truth in Lending Act**

Plaintiff next alleges that Ocwen violated the Truth in Lending Act ("TILA"). TILA, 15 U.S.C. § 1601, *et seq.*, and its implementing Regulation Z, 12 C.F.R. § 226, *et seq.*, "require that certain material disclosures be made to a consumer seeking an extension of credit secured by real property." *Drake v. Ocwen Fin. Corp.*, No. 09-C-6114, 2010 WL 1910337, at *7 (N.D. Ill. May 6, 2010). Regulation Z's purpose "is to promote the informed use of consumer credit by requiring disclosures about its terms and cost." 12 C.F.R. § 226.1.

Plaintiff contends that Ocwen violated TILA by failing to comply with 12 C.F.R. § 226.18(h) (requiring a creditor to make the necessary disclosures), 12 C.F.R. § 226.20(a)(4) (requiring disclosures for the consumer upon a refinancing), and 12 C.F.R. § 1026.20(c) (requiring a creditor or servicer to provide consumers disclosures "in connection with the adjustment of interest rates pursuant to the loan contract that results in a corresponding adjustment to the payment."). Plaintiff says that Ocwen's violations were intentional, deliberate, and caused confusion. The Court will address each allegation in turn.

*a) Violation of 12 C.F.R. § 226.18(h) - creditor failing to provide disclosures*

Plaintiff contends that Ocwen violated TILA because, as a creditor, it failed to provide the necessary disclosures required under § 226.18(h). Ocwen responds that it was not required to comply with the disclosure requirements under TILA because it is a loan servicer, not a creditor. Plaintiff says that it is not clear whether Ocwen is a servicer or a creditor because the Loan Modification Agreement required plaintiff to pay Ocwen in more than four installments, which is an attribute of a creditor under 15 U.S.C. § 1602(g).

Only creditors are bound by the disclosure requirements under § 226.18(h) of TILA. *See* 12 C.F.R. § 226.18(h). Under TILA, a "creditor" is defined as "a person who both (1) regularly

5

extends, whether in connection with loans, sales of property, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the fact of the indebtedness." 15 U.S.C. § 1602(g). Absent an ownership interest in the loan, a loan servicer cannot be held liable under TILA. *See Iroanyah v. Bank of Am.*, 753 F.3d 686, 688 n.2 (7th Cir. 2014) (noting that a loan servicer is not the originator or assignee of a loan and therefore cannot be liable for damages under TILA); *Horton v. Country Mortg. Servs.*, No. 07-CV-6530, 2010 WL 55902, at *3 (N.D. Ill. Jan. 4, 2010) ("Only creditors and assignees can be liable under TILA."). The term "servicer," means "the person responsible for servicing a loan . . . ." 15 U.S.C.A. § 1602 (cc)(7) (definition adopted from 12 U.S.C.A. § 2605 (i)(2)). Section 2605 (i)(2) goes on to define "servicing" as meaning "receiving periodic payments from a borrower." 12 U.S.C.A. § 2605 (i)(3).

In the amended complaint, plaintiff refers to Ocwen as a "servicer," but never as a creditor. (*See* Am. Compl. ¶¶ 6, 33, ECF No. 99.) Furthermore, plaintiff fails to allege that Ocwen has any ownership interest in the loan. Plaintiff contends that whether Ocwen is a creditor is unclear because the loan modification agreement was payable in more than four installation payments. However, the adopted definition of a "servicer" under TILA includes receiving periodic payments. Based on the allegations in plaintiff's amended complaint, Ocwen appears to be a loan servicer, not a creditor.

   *b) Violation of 12 C.F.R. § 226.20(a)(4) - requiring disclosures upon a refinancing*

Plaintiff contends that Ocwen was required to provide disclosures pursuant to 12 C.F.R. § 226.20(a)(4) because the Loan Modification Agreement qualifies as a refinancing. Ocwen

extends, whether in connection with loans, sales of property, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the fact of the indebtedness." 15 U.S.C. § 1602(g). Absent an ownership interest in the loan, a loan servicer cannot be held liable under TILA. *See Iroanyah v. Bank of Am.*, 753 F.3d 686, 688 n.2 (7th Cir. 2014) (noting that a loan servicer is not the originator or assignee of a loan and therefore cannot be liable for damages under TILA); *Horton v. Country Mortg. Servs.*, No. 07-CV-6530, 2010 WL 55902, at *3 (N.D. Ill. Jan. 4, 2010) ("Only creditors and assignees can be liable under TILA."). The term "servicer," means "the person responsible for servicing a loan . . . ." 15 U.S.C.A. § 1602 (cc)(7) (definition adopted from 12 U.S.C.A. § 2605 (i)(2)). Section 2605 (i)(2) goes on to define "servicing" as meaning "receiving periodic payments from a borrower." 12 U.S.C.A. § 2605 (i)(3).

In the amended complaint, plaintiff refers to Ocwen as a "servicer," but never as a creditor. (*See* Am. Compl. ¶¶ 6, 33, ECF No. 99.) Furthermore, plaintiff fails to allege that Ocwen has any ownership interest in the loan. Plaintiff contends that whether Ocwen is a creditor is unclear because the loan modification agreement was payable in more than four installation payments. However, the adopted definition of a "servicer" under TILA includes receiving periodic payments. Based on the allegations in plaintiff's amended complaint, Ocwen appears to be a loan servicer, not a creditor.

   *b) Violation of 12 C.F.R. § 226.20(a)(4) - requiring disclosures upon a refinancing*

Plaintiff contends that Ocwen was required to provide disclosures pursuant to 12 C.F.R. § 226.20(a)(4) because the Loan Modification Agreement qualifies as a refinancing. Ocwen

opposes application of § 226.20(a)(4), arguing that loan modifications do not qualify as a refinancing triggering such obligations.

Disclosures are required when a loan is refinanced. 12 C.F.R. §226.20(a). The relevant section of Regulation Z states that, "A refinancing occurs when an existing obligation that was subject to this subpart is satisfied and replaced by a new obligation undertaken by the same consumer." *Id.* The section further identifies instances that shall not be treated as a refinancing, including "[A] change in the payment schedule or a change in collateral requirements as a result of the consumer's default or delinquency, *unless the rate is increased, or the new amount financed exceeds the unpaid balance plus earned finance charge and premiums for continuation of insurance of the types described in § 226.4(d)." Id.* (emphasis added).

Plaintiff contends that because his Note had a balance of $114,750.00 and his Loan Modification Agreement had a balance of $139,598.43, he qualifies for this exception and thus the loan modification should be treated as a refinancing. Ocwen responds that in order to qualify for the exception, the loan modification must first meet the basic definition of a refinancing, which it does not.

The Seventh Circuit has adopted a statement from the Official Staff Commentary to 12 C.F.R. § 226.20(a) to define what constitutes a refinancing. *See Jackson v. Am. Loan Co.*, 202 F.3d 911, 913 (7th Cir. 2000). The Commentary says that "[c]hanges in the terms of an existing obligation, such as the deferral of individual installments, will not constitute a refinancing unless accomplished by the cancellation of that obligation and the substitution of a new obligation." *See Jackson v. Am. Loan Co.*, 202 F.3d 911, 912-13 (7th Cir. 2000) (citing 12 C.F.R. Pt. 226, Supp. I, p. 399). Appling this rule, courts have found that a loan modification does not constitute a refinancing since it does not cancel the existing obligation. *See e.g. Drake*, 2010 WL 1910337, at

*7 (holding that a loan modification does not constitute a refinancing); *CitiMortgage, Inc. v. Bukowski*, 2015 IL App (1st) 140780, ¶ 21 (finding that TILA does not apply to loan modifications).

In *Drake*, the court considered whether a loan modification constituted a refinancing. *Drake*, 2010 WL 1910337, at *8. The modification agreement at issue included a paragraph that stated that the covenants and agreements from the original note and mortgage remained in full force and effect and that none of the obligations under the original note and mortgage were diminished or released as a result of the loan modification. *Id.* In that case, the court held that it was clear that the modification did not replace the existing obligation and replace it with a new one such that the loan modification did not constitute a refinancing. *Id.* at *9.

Similar to *Drake*, plaintiff entered into a Loan Modification Agreement with Ocwen. Plaintiff contends that, per the agreement, the terms of his mortgage did not stay the same because there were additional fees added to the principal balance and the interest rate was changed to become an adjustable rate. However, just as in *Drake*, plaintiff's Loan Modification states, "Nothing in this agreement will be understood or construed to be a satisfaction or release in whole or in part of your Note and Mortgage." (Am. Compl., Exhibit C, ECF No. 99-3.) Given this, the terms of the original note and mortgage were not cancelled and replaced by the Loan Modification Agreement. Accordingly, the modification did not trigger 12 C.F.R. § 226.20(a)(4)'s disclosure obligations.

  *c) Violation of 12 C.F.R. § 1026.20(c) - requiring disclosures for an adjustable rate mortgage*

Plaintiff contends that Ocwen violated TILA's requirement that servicers of adjustable rate mortgages provide certain disclosures to consumers. Ocwen states that the only adjustable rate mortgages for which disclosures are required are those for homestead properties. Because

8

the property in question is not plaintiff's homestead, Ocwen argues it was not required to provide the additional disclosures under 12 C.F.R. § 1026.20(c).

Section 1026.20(c) defines an adjustable rate mortgage as, "a closed-end consumer credit transaction secured by the *consumer's principal dwelling* in which the annual percentage rate may increase after consummation." 12 C.F.R. § 1026.20(c)(1)(i) (emphasis added). In arguing that the property is not plaintiff's homestead, Ocwen points to the amended complaint where plaintiff states that he leased the property to tenants. While this suggests that the property was not plaintiff's principal dwelling, having renters does not necessarily mean that plaintiff was not also living there. Nonetheless, plaintiff's original mortgage document states, "this is not a homestead property as to said buyer." (Am. Compl, Exhibit B, ECF No. 99-2.) Further, paragraph 24 of the mortgage states that borrower, plaintiff, waives all rights under the Illinois homestead exemption laws, showing that the property was not plaintiff's principal dwelling. *Id*. Thus, although the mortgage was an adjustable rate mortgage, the mortgage does not appear to be secured by the consumer's principal dwelling. As such, Ocwen would have no obligation to provide the additional disclosures under 12 C.F.R. § 1026.20(c).

Accordingly, plaintiff has failed to plausibly allege a TILA claim. The claim is dismissed without prejudice.

## CONCLUSION

For these reasons, defendants' partial motion to dismiss plaintiff's first amended complaint is granted in part and denied in part. Plaintiff may proceed on Count III; Count IV is dismissed without prejudice.

**SO ORDERED.**

                                                 **ENTERED: April 4, 2018**

                                                 **HON. JORGE ALONSO**
                                                 **United States District Judge**